## Steckel et al. *versus* The First National Bank of Allentown.

A bank is responsible for the safe keeping of the money of a depositor, and it cannot set up fraud of its own officers as an answer to a demand for repayment.

March 3d 1880. Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. MERCUR and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Bucks county:* Of January Term 1880, No. 188.

Assumpsit by Alfred P. Steckel and others, partners, trading as the Columbia Slate Company, against the First National Bank of Allentown, to recover a balance of money deposited with said bank.

The material facts will be found stated in the opinion of this court. At the trial before Watson, P. J., the plaintiffs presented the following points, to which are appended the answers of the court.

2. That if the jury believe that the certificates of William H. Blumer & Co. were not accepted by the plaintiffs from the defendants as a payment and satisfaction *pro tanto* of the indebtedness of the bank, the plaintiffs are entitled to recover upon the original indebtedness.

Ans. " I can not so instruct you."

3. That whether the certificates of deposit were received by the plaintiffs in payment of the bank's indebtedness to them, is a question of fact for the jury.

Ans. " I can not so instruct you."

4. That the burden of proving that the certificates of deposit were accepted by the plaintiffs in payment of the bank's indebtedness to them, is upon the defendants.

Ans. " I can not so instruct you."

5. That if the jury believe that the plaintiffs were deceived by

the fraudulent representations of the officers of the bank, and led to believe that the certificates of William H. Blumer & Co. were certificates of deposit in the First National Bank of Allentown, the reception of them by the plaintiffs was not a payment, and the plaintiffs would be entitled to recover.

Ans. "There is no evidence of fraud in the giving of the certificates by any officer or servant of the bank, except such as relates to the false representations made by the teller. These false representations must not affect the bank with the consequence of fraud, if the money for which the plaintiffs' checks were drawn was appropriated according to their directions."

In the general charge, the court, inter alia, said:

"The uncontradicted testimony in the cause is, that the plaintiffs had a running deposit account with the defendants during the years 1876 and 1877. Checks had been drawn against that account covering the whole of it except the sum of $251.43. This sum with interest from the month of March 1877 is admitted by the defendants to be due to the plaintiffs, and they are liable to a verdict and judgment for that amount.

"[It appears also by the testimony that three other checks were drawn by the defendants against their account for the sums of $700, $300 and $2000 respectively. They received from the teller of the bank in exchange for these checks three certificates of deposit, signed by William H. Blumer & Co., and acknowledging that the plaintiffs had deposited with them these respective amounts, payable, with interest upon the return of the certificates. These are dated September 23d 1876, December 1st 1876 and February 3d 1877.

"You have heard the circumstances under which these checks were drawn and these certificates of deposit were received. Prima facie this would be a payment by the bank to the plaintiffs, or to their order, of the amounts represented by the several checks and certificates.]

"The plaintiffs, however, say that the transactions were fraudulent, that the fraud was practised by the bank, or by its teller, upon them, which induced them to receive the certificates in exchange for their checks, and they now allege that they were not payments of the liability of the bank to them to the extent represented by the papers, but that, in consequence of this fraud, the original liability of the bank to them continued for these several sums, and they seek to recover the amount in this suit, in addition to the sum I have already named, which is admitted to be due.

"Ordinarily, as between a debtor and a creditor, the giving of a note of the debtor himself, or the transfer of a note or other evidence of indebtedness of another person, will not operate as an extinguishment of the original debt which was due from the one to the other. It is true the parties may by their agreement give it

[Steckel *v.* Bank.]

this effect, but, in the absence of such an agreement, the presumption is that the new evidence of debt is received as a collateral security for the existing liability, and that it is not a discharge until satisfaction has been received by actual payment.

" This principle is invoked by the plaintiffs here. They say that the bank did not pay to them the money, the amount of which was named in these certificates, but that they gave to them in exchange these certificates of deposit with William H. Blumer & Co. ; that this is merely evidence of indebtedness from them, and that, in the absence of any contract to receive these in payment, the presumption is, that they were not so received, and the original liability of the bank to them continues, notwithstanding the certificates were passed over to them.

" They say also that a fraud was practised upon them ; that the plaintiffs asked them for certificates of deposit, drawing interest of the First National Bank of Allentown ; that there was a conversation between one of them and the teller of the bank some days before the first of the certificates was given ; that the teller informed him that the bank did receive deposits and issue certificates upon interest ; that when he went there to obtain the certificate this first one was given to him, that he objected to it, saying that it was the certificate of William H. Blumer & Co., and not that of the First National Bank. The teller replied it was the same thing, and that the bank would pay it or place it to his credit whenever he returned it. This was said in the presence of the cashier of the bank, and upon that assurance the testimony is, the certificate was received. The others appear to have been received afterward without question upon the subject so far as I remember.

" Afterwards, it seems, the plaintiffs grew dissatisfied with the certificates, and the same one to whom they were given visited the bank, met Mr. Blumer, the president of the bank, and had a conversation with him upon the subject. Mr. Blumer told him that the bank was then in the hands of the bank examiner ; that he would be through in a few days when everything would be right, and he would be put right upon the books of the bank ; that he should not make himself uneasy upon the subject. A few days afterwards he called again in company with Mr. Roper, his counsel, when a conversation to the same effect took place between them and Mr. Blumer.

" [This case has been tried, and regarded very much as involving the question of the ordinary relation of debtor and creditor. I have been so disposed to look upon it myself, and it is only upon reflection during the argument of the case, that I have seen cause to change my opinion in this respect.

" I do not think that the relation existing between a bank and its depositors, is the same as that obtaining between a debtor and creditor in ordinary cases.] A bank is for the purpose of receiving

[Steckel v. Bank.]

deposits for safe keeping.   A man puts his money there liable to be drawn out by him at any time when he may see fit, in the usual course of business.   He may draw it out payable to himself upon his check, or he may by his check appoint it to be paid to another. [A bank is liable for its safe keeping, for its return upon demand, and it is not until demand is made upon it for payment and a refusal to pay that any suit can be maintained against it for a deposit in its care.   It is not until that demand, I think, that the usual relation between debtor and creditor arises between them. Any disposition which a bank may make of the deposit by the direction of the depositor, is just as effectual a discharge to the bank, as an actual payment to him in cash.]   [It makes no difference to the bank to whom that deposit is paid, so that it is paid according to the direction of the depositor ; and when he gives to the bank a direction to pay to somebody else, or place to the credit of somebody else, and the bank pays or credits according to the direction, it is thus far released from liability to the original depositor.]   The property which was before his, becomes the property of him to whom he has directed the transfer to be made. The bank is not affected by the transaction between the parties. It has nothing to do with them.   Its only duty consists in paying over the money in their hands belonging to the depositor as he shall instruct.

"Now what is the evidence here ?   Dr. Steckel went to the bank.   He was desirous of obtaining interest upon a portion of the company's funds that were deposited in this bank.   He made inquiries.   He was answered in the manner that has been testified ; and when he comes to receive a certificate of deposit, he is handed a certificate of William H. Blumer & Co., but objects to it.   His eyes show him the fact, that it is not the certificate of ' The First National Bank ;' that there is not one word in it to make that bank liable ; and that it is the certificate of William H. Blumer & Co.   He was assured by the teller, that the bank would pay them, and that it was the same thing as a certificate of the bank, and he could have the money on it or credit for it, at any time he might bring it to the bank.

"Now this was a new liability, if one was created—outside of these papers.   Had the teller any authority thus to bind the bank ? It would be in effect a guarantee of the paper of William H. Blumer & Co., if he had any such authority to bind the bank.

"It is incumbent upon the plaintiffs to show either that it was within the usual course of his employment as teller, or that he was specially authorized by the bank to make it.   So far as I remember, there is no such testimony in this case ; and it follows, therefore, that the bank cannot be affected by any such contract, if it was made between Dr. Steckel and the teller.

"It is undisputed that the checks of the plaintiffs went into the

[Steckel *v.* Bank.]

possession of the bank, and the positive testimony upon the part of the defendants is that these checks were placed by the bank to the credit of William H. Blumer & Co., as the proceeds of these certificates of deposit. Now the bank made nothing by this transaction. They simply charged the account of the plaintiffs, and they credited the account of William H. Blumer & Co. with the amounts stated in these checks. It was a transfer by direction of the plaintiffs of their deposit to the credit of Blumer & Co., and to that extent, in the absence of fraud by the bank, or by its officers, by which they would be affected, extinguished the liability of the bank to the extent of the amounts mentioned in the checks.

"Was there fraud practised upon the plaintiffs which would affect the bank and render it liable, or continue its liability, for the amounts here claimed.

"An employee, agent or officer, has authority to bind his principal just so far as he is authorized to do by his principal, either expressly or by employing him in a particular manner. There is nothing here to show that the bank ever directed this teller to make these representations so as to bind it by contract. There is nothing to show that this was a representation made in his usual employment and course of business that would be fraudulent and thus affect the bank. It was, so far as appears, a representation outside of his authority. No authority has been shown, and in the absence of evidence of it you cannot presume it to exist.

"If an officer thus makes a fraudulent representation, tells things that are not true in fact, and thus induces one to act, his principal is not to be affected by that unless the principal profits by it. Then he would not be allowed to take advantage of the wrong of his servant, and would be held accountable so far as he reaped any benefit from it.

"There is nothing to show that the bank did reap any benefit from that transaction. The money that it received from the plaintiffs went immediately to the credit of William H. Blumer & Co., and I am not, therefore, able to see that there was any sufficient evidence of fraud either upon the part of the bank or of its officers such as would affect it and create or continue a liability. This being undisputed we instruct you, if you believe it, that your verdict should be for the plaintiffs for the amount which is admitted to be due at that time, to wit, $251.53, with interest from the time demand was made in March 1877.

"Counsel for plaintiffs asks that the question of fraud be submitted to the jury.

"By the court:—[I hardly think there was evidence sufficient to justify the jury in finding fraud if I should submit it. If there is not enough to justify the jury in finding that way, and if I would be bound to set aside the verdict upon a motion for a new

[Steckel *v.* Bank.]

trial if they found that there was fraud, then it is not proper to submit it to the jury."]

The verdict was for the plaintiffs for $289.28. After judgment thereon they took this writ, and alleged that the court erred in the answers to the above points, in the portions of the charge included in brackets, and the refusal to submit the question of fraud to the jury.

*E. J. Fox, Evan Holben* and *D. D. Roper*, for plaintiffs in error.—It is a well established rule of law that whenever and wherever fraud is involved in a case, or where the allegation of fraud is made in the trial of a cause, and there is any evidence, however slight, the courts are required to submit it to the jury : Frazer *v.* Hill, 2 Phila. R. 299 ; Hill *v.* Gray, 1 Stark. 352 ; Pilmore *v.* Hood, 5 Bing. N. C. 97. The bank having received the benefit of the money it is responsible to account for it to the plaintiffs, and even though the bank officers had no authority from the board of directors to make the representations to the plaintiffs to the effect that the certificates would be paid by the bank, and were the obligations of the bank for the money it received : Morse on Banks and Banking, pp. 12, 13, 91, 93, 105.

*Edward Harvey, R. E. Wright, Jr.,* and *G. & H. Lear,* for defendant in error.—The bank is under an obligation to honor checks upon the balance in hand, whenever they are presented for payment. This contract is implied from the usual course of business. It is part of the tacit understanding that the deposit is left to be repaid whenever and to whomever the depositor shall appoint. The order for payment may be a verbal one : Morse on Banks and Banking 36 ; or, it may be according to the usages of the business, by written evidences, such as checks, drafts, &c. And when the checks are honored the liability is extinguished : Farmers' and Mechanics' National Bank *v.* King, 7 P. F. Smith 202. The drawing of a check on a banker without specifying therein the fund drawn upon, is not *ipso facto* an appropriation of that fund ; but if it be completed by presentation and payment, then it is : Loyd et al. *v.* McCaffrey, 10 Wright 410. It is an appropriation of the drawer's funds in the bank's hands for the amount named in it : Matter of Brown, 2 Story 502 ; Union National Bank *v.* Oceana County Bank, 80 Ill. 212.

One who alleges fraud may affirm the contract and receive special damages, or disaffirm it and receive the consideration paid. Before he can do the latter he must return, or offer to return, whatever he has received under the contract. He must place the other party as nearly as possible in *statu quo ;* to do this it is incumbent on him to restore money, property or securities, unless they are absolutely

[*Steckel v.* Bank.]

worthless; and the burden to show this is on the party who failed
to restore them.

From the nature of the transaction the plaintiffs knew the teller
was acting *ultra vires :* Lloyd *v.* West Branch Bank, 3 Harris 174.
The plaintiffs were able to read, and did read, the certificates, and
were bound to know and understand their contents: Bigelow on
Fraud 73; Grace *v.* Adams, 100 Mass. 507; Rice *v.* Dwight
Manuf. Co., 2 Cush. 80; Rockafellow *v.* Baker, 5 Wright 321.
If there is no sufficient evidence to justify an inference of the dis-
puted fact, the court has the right, and it is its duty, to withhold
it from the jury: Battles & Webster *v.* Laudenslager, 3 Norris
452.

Mr. Justice PAXSON delivered the opinion of the court, May
3d 1880.

The principal cause of complaint in this case is that the learned
judge of the court below withdrew from the jury the consideration
of the question of fraud, upon the ground that there was not suf-
ficient evidence to submit it.   The plaintiffs kept an account with
the corporation defendant, and were in the habit of making deposits
and drawing checks in the usual manner. William H. Blumer was
the president of the bank; his son, Jacob Blumer, was the cashier.
Three of the directors, including the said William H. Blumer, com-
posed the banking-house of William H. Blumer & Co., which car-
ried on business but a few hundred feet distant from the First
National Bank of Allentown.   The plaintiffs having money on
deposit with the bank, and being desirous of obtaining interest-
bearing certificates therefor, called at the bank for that purpose.
Dr. A. P. Steckel, one of the plaintiffs, testifies as to what occurred
substantially as follows: " I went to the bank every week or two
to make my deposits; sometime in August, when I made deposit,
I asked the teller, George Straub, Does the First National Bank
take any money on certificates? He said, Yes, sir; do you want
to leave us some? I said No; not to-day. I asked him whether
the First National Bank issues certificates of deposit, and, as a
matter of course, pay interest? and he said, Yes.   Then I came
there again in September 1876, and made my ordinary deposit in
the bank; and after we were through, I said to the teller that I
would take the First National Bank certificates for $700; I filled
out a check, and he handed me a certificate; I looked at the cer-
tificate for $700; it was to be made on demand, and asked him, Is
this the First National Bank certificate? The answer was, Yes,
sir, it is.   I then said, this reads Blumer & Co.; I want this dis-
tinctly understood, I want nothing but the First National Bank
certificate. He assured me that this was one and the same thing;
that it should pass to the credit of the company the same as it was
before.   With this assurance, I took that certificate.   This was in

[Steckel *v.* Bank.]

the presence of the cashier of the bank, Jacob A. Blumer." Two other certificates, aggregating, with the one above mentioned, the sum of $3000, were obtained under circumstances not essentially different. There was evidence that the president of the bank recognised them as binding upon the bank, and offered to reinstate the plaintiffs as they were before, when the bank examiner was through with his examination. That examination, however, resulted in the closing of the bank.

We must assume that the jury would have found the facts as testified to by the plaintiff Steckel. The facts established, we have a case of palpable fraud. It is not an answer to say the plaintiffs ought not to have been deceived, and, with ordinary care, would not have been. The fact that the Blumers were respectively president and cashier of the National Bank, as well as leading members of the banking-house of Blumer & Co., was calculated to mislead and deceive ; and when told in positive terms that the certificates, although signed by Blumer & Co., were the certificates of the bank, the plaintiffs may readily have believed it was all right.

It was urged, however, that, even if there was a fraud, it does not affect the bank ; that an agent can only act within the scope of his authority, and that a bank is not bound by the fraudulent representations of one or more of its officers.

There is no doubt as to the general rule that an agent can only bind his principal so long as he acts within the scope of his authority ; but we do not think the principle applies in this case. A bank is responsible for the safe keeping of the money of a depositor, and it cannot set up the fraud of its own officers as an answer to a demand for repayment. Public policy forbids it.

The plaintiffs, after ascertaining the fraudulent character of the transaction, tendered the certificate to the bank, and demanded the payment of their original deposit. In other words, they rescinded the contract on the ground of fraud. If their allegations are true, they had a right to do so, and proceed upon the original cause of action.

The question of fraud should have been submitted to the jury. What has been said sufficiently covers the points involved.

Judgment reversed, and a *venire facias de novo* awarded.