# Ziegler *versus* The First National Bank of Allentown.

93    393
e41SC 395

The cashier is the executive officer of a bank, and authorized by the very nature of his office to receive money on deposit, and after receiving it, no trick nor fraud on his part, by means of which the money was passed over to a firm in which the bank officers were largely interested, can absolve the bank from its liability.

March 4th 1880. Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. MERCUR and GREEN, JJ., absent.

Error to the Court of Common Pleas, of *Lehigh county*: Of January Term 1880, No. 194.

Assumpsit by Philip Ziegler against the First National Bank of Allentown, to recover the sum of $2980.80 deposited with said bank. .

The defendant was a national bank, organized and incorporated under the national banking laws, and was located and doing business in the city of Allentown. It suspended some time in March or April 1877. At the time of its suspension and for a number of years prior thereto, William H. Blumer was the president of the bank, Jacob A. Blumer, a son of William H. Blumer, cashier, George E. Straub, teller, and William H. Blumer, Jesse M.

Line and William Kern were among the board of directors. There was also at the same time a private banking house in the city of Allentown, composed of William H. Blumer, Jesse M. Line and William Kern, trading under the firm name of William H. Blumer & Co. In March 1877, Blumer & Co. failed. On October 11th 1876, and for a long time prior thereto, the firm of William H. Blumer & Co. was largely insolvent, and this insolvency was known to the officers of the First National Bank of Allentown.

At the trial, the plaintiff made the following offer. To prove "by Philip Ziegler, the witness on the stand, that prior to 1874, the plaintiff kept his accounts with and did his banking business at the Union National Bank of Reading, Pa., that some time in the year 1874 the plaintiff went to the First National Bank, and in the bank he met Jacob A. Blumer, the cashier of said bank, and told him that he wanted to deposit some money in said bank; that he wanted to deposit it in the bank so that he could draw his checks against it whenever he wanted to; that Jacob A. Blumer, the cashier, then said that that was all right; that he then gave the money to Blumer, who took it and proposed to give the plaintiff a certificate of deposit; that plaintiff then said he wanted no certificate of deposit, that at the Union National Bank of Reading he had a deposit book and checks to draw against his accounts, and that was the way he wanted his accounts in the First National Bank; that the said Blumer then said that that was not the way they did business, that they gave no books, but gave certificates of deposit, that that was the way they did business, that it was all the same; that he could draw his checks on the bank and that bank would pay them; and that the said Jacob A. Blumer then told and assured plaintiff that it was all right, that his money was deposited in the First National Bank of Allentown; in consequence of which plaintiff took said certificate of deposit, not being able to read the same, and believing and being assured by the said Jacob A. Blumer that it was the certificate of the First National Bank; that at the same time the said Jacob A. Blumer gave plaintiff a number of blank checks on the said bank; that after that plaintiff deposited money from time to time and drew checks on the First National Bank from time to time up to October 11th 1876, which checks were all duly paid by said bank; that from time to time he made settlement of his accounts, when the checks paid by the bank were surrendered to him and new certificates given to plaintiff; that on October 11th 1876, he made a settlement with the officers of the bank and deposited some more money, and that the balance then due him was $2980.80, for which he received a certificate from the officers of the bank, which in fact was the certificate of the banking-house of William H. Blumer & Co., that up to this time all certificates plaintiff had received were surrendered up to the First National Bank, and

[Ziegler v. Bank.]

plaintiff does not know, and never did know, whether they were the certificates of William H. Blumer & Co., or of the First National Bank; that when plaintiff received the certificate of October 11th 1876, he did not know that it was the certificate of William H. Blumer & Co., but relying upon the representations and assurances of the said Jacob A. Blumer, that he had his money deposited in the First National Bank, he believed said certificate to be a certificate of said bank, and that he never discovered that said certificate was the certificate of William H. Blumer & Co., and not of the First National Bank, until some time in the spring of the year 1877, after the failure of the First National Bank, and of William H. Blumer & Co.; that after October 11th 1876, plaintiff drew a number of checks on said First National Bank, aggregating $480.35, which were paid by said bank; that the plaintiff never knew of the existence of the firm of William H. Blumer & Co., until after their failure in 1877, never dealt with said firm, and that all his dealings in the premises were with the officers of the First National Bank. This to be followed by proof that on October 11th 1876, and for a long time prior thereto, the firm of William H. Blumer & Co. was largely insolvent, which insolvency was known to the officers of the First National Bank, and that on that day the account of said William H. Blumer & Co. in the First National Bank was overdrawn to a large amount, and that said account remained overdrawn down to the time of the failure of William H. Blumer & Co. and the suspension of the said First National Bank, and that at the time of said failure, said overdraft exceeded $100,000, and that on October 11th 1876, the officers of said First National Bank, without the knowledge and consent of plaintiff, entered said balance of $2980.80, then due plaintiff, to the credit of William H. Blumer & Co., on the books of the bank, for the purpose of making good in part said overdraft of William H. Blumer & Co.

The defendant objected, on the ground that the evidence was irrelevant, incompetent and inadmissible under the pleadings. The court sustained the objection and charged the jury, "there being no evidence to submit to you, under the view of the law the court takes in this case, I instruct you to render a verdict in favor of the defendant."

Verdict accordingly, when plaintiff took this writ and alleged that the court erred in rejecting his offer.

*John Rupp* and *John D. Stiles*, for plaintiff in error.—The cashier of an incorporated bank is the general executive officer to manage its affairs in all things not peculiarly committed to the directors; he is the agent of the corporation, *not of the directors*: Bissel *v.* First National Bank of Franklin, 19 P. F. Smith 415; Harrisburg Bank *v.* Tyler, 3 W. & S. 376; Bank of Penna. *v.*

Reed, 1 W. & S. 101; Story on Agency, sects. 114, 115; Bank of Kentucky *v.* Schuylkill Bank, 1 Pars. Eq. 180; Lloyd *v.* The West Branch Bank, 3 Harris 172. A bank is liable for the frauds or mistakes of its cashier: Angell & Ames on Corp., sect. 11. The defendant was estopped from denying that plaintiff was a depositor in and a creditor of the bank, and that the certificate of October 11th 1876 was the certificate of the bank. By the payment of interest, the bank was precluded from denying its liability: 2 Parsons on Contracts 793; Pickard *v.* Sears, 6 A. & E. 469; Commonwealth *v.* Moltz, 10 Barr 527; Crowell *v.* McConkey, 5 Id. 168, 176; Waters's Appeal, 11 Casey 523; Woods *v.* Wilson, 1 Wright 379; Hill et al. *v.* Epley et al., 7 Casey 331; Miranville *v.* Silverthorn, 12 Wright 147. Again, where a party does acts or makes assertions which amount to an explanation of the contents of a written paper, the party dealing with him may rely thereon and need not ask to have the paper read or explained.

*Edward Harvey* and *R. E. Wright, Jr.*, for defendant in error.— The liability of the principal depends upon the facts that the act was done in the exercise and within the limits of the powers delegated: Thayer *v.* Boston, 19 Pick. 511; Fogg *v.* Griffin, 2 Allen 6; Little Miami Railroad Co. *v.* Wetmore, 19 Ohio St. 110; Smith's Master and Servant 150; Lloyd *v.* West Branch Bank, 3 Harris 174; Kirkpatrick *v.* Winans, 1 C. E. Green 408. A person who cannot read should require the contract to be read to him; and if he does not, he cannot on principle, complain that the contents were falsely stated to him: Ellis *v.* McCormick, 1 Hilt. 313; Greenfield's Estate, 2 Harris 504; Grace *v.* Adams, 100 Mass. 507; Rice *v.* Dwight Manufacturing Co., 2 Cush. 80; Hallenbeck *v.* Dewitt, 2 Johns. 404; Pennsylvania Railroad Co. *v.* Shay, 1 Norris 198; Adams *v.* Bachert, 2 Id. 524. If the contract is to be rescinded, the parties must be placed as far as possible in the situation in which they stood before the transaction: Bigelow on Fraud 409; Neblett *v.* MacFarland, 2 Otto 101; Kerr on Fraud 325; Babcock *v.* Case, 11 P. F. Smith 427; Roth *v.* Crissy, 6 Casey 145; Beetem *v.* Burkholder, 19 P. F. Smith 249; Morrow *v.* Rees, Id. 368; Moore *v.* Shenk, 3 Barr 12; Pearsoll *v.* Chapin, 8 Wright 9; Turnpike Company *v.* Commonwealth, 2 Watts 433; Piper *v.* Slonaker, 2 Grant 113; Jackson *v.* McGinness, 2 Harris 331; Ives *v.* Niles, 2 Watts 323; Bell *v.* Hartman, 9 Phila. R. 1.

[See Steckel *v.* The Bank, *ante,* p. 376, and Resh *v.* The Bank, *post,* p. 395.—REP.]

Mr. Justice PAXSON delivered the opinion of the court, May 3d 1880.

[*Ziegler v. Bank.*]

When the plaintiff took his money to the First National Bank of Allentown, and handed it to the cashier for deposit, the bank became responsible therefor. The cashier was the executive officer of the bank, and authorized by the very nature of his office to receive money on deposit. After receiving it, no trick or fraud on his part, by means of which the money was passed over to Blumer & Co., a firm in which the bank officers were largely interested, and appeared to have had the control, could absolve the bank from its liability. No class of men have the confidence of the people to a greater extent than bank officers. Depositors do not deal with them at arms' length, and can be imposed upon with the greatest ease by such officials. It would be monstrous to allow them to take advantage of the ignorant and unwary, by reason of their position and the confidence which it inspires. It was doubtless a misfortune to this bank to have unworthy officials, if such should prove to be the case. It certainly was unwise to permit its chief officers to occupy a dual position with divided interests, but the consequences resulting therefrom cannot be visited upon those who dealt in good faith with the bank.

This case is ruled in a great measure by Steckel *v.* The Bank, *ante*, p. 376. It was error to reject the evidence contained in plaintiff's offer. The facts offered to be proved amounted to a fraud upon the plaintiff, and he was entitled to have that question passed upon by a jury.

Judgment reversed, and a *venire de novo* awarded.