# Bos, Appellant, *v.* People's National Bank of Tarentum.

*Banks and banking—Fraud on depositor—Evidence—Case for jury.*

1. In an action by an illiterate depositor against a bank to recover the amount of his deposit, the case is for the jury where the testimony of the plaintiff himself tends to show that he was misled by the representations of an officer in charge of one of the departments of the bank, into accepting the individual obligation of the officer under the belief that he was receiving an obligation of the bank for the repayment of his deposit with interest thereon.

2. In such a case the plaintiff cannot prove by another witness, that in an independent transaction the same bank officer had undertaken to defraud the witness in a manner similar to the way in which the plaintiff had been defrauded.

Argued April 26, 1909. Appeal, No. 145, April T., 1909, by plaintiff, from judgment of C. P. No. 4, Allegheny Co., Third Term, 1907, No. 278, on verdict for defendant in case of

Stefan Bos v. People's National Bank of Tarentum. Before
RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and
HEAD, JJ. Reversed.

Assumpsit to recover the amount of a bank deposit. Before
SWEARINGEN, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the court gave binding instructions for de-
fendant.

When Paul Sodoma was on the stand, the plaintiff made the
following offer:

Mr. Maxey: Counsel for plaintiff offers to prove by the wit-
ness on the stand, Paul Sodoma, that he is a resident of Arnold,
and that he is acquainted with Joseph J. Sirkush, cashier of
the defendant bank; that he was in the bank a short time prior
to March 22, 1906, for the purpose of depositing money therein;
that Sirkush then and there advised the witness that he could
get a larger rate of interest for his money in this bank than
elsewhere, and that if he would allow him to place $200 of it in
a certain account in the bank, that he could get six per cent in-
terest, and come around every one-half year; and that Sirkush,
further, did take the money from the witness, saying that the
bank was out of deposit books, and handed the witness a piece
of paper, saying to witness that it was a memorandum of his
deposit in the bank and would answer the purpose of a book;
that witness subsequently learned that it was a promissory
note of said Sirkush and that upon so ascertaining, he made an
effort to collect the same, and subsequently did, by criminal
proceedings, recover from Sirkush the money represented by
the note. This, for the purpose of showing that Sirkush, the
agent and cashier of this bank, had committed some fraudu-
lent acts at about the same time, and tending to show a mo-
tive for a particular line of conduct, to wit: that the agent,
Sirkush, was actuated by a motive to defraud.

Mr. McVicar: Objected to as incompetent, irrelevant and
immaterial; that any evidence of fraudulent representations
made to either person is not any evidence of fraud alleged in
this case.

The Court: Objection sustained.

Exception noted and bill sealed for plaintiff. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) in giving binding instructions for defendant; (2) ruling on evidence, quoting the bill of exceptions.

*W. S. Maxey,* for appellant.—The testimony of the plaintiff being that at the time the transfer of the money was made, Sirkush privately represented to plaintiff that he was giving him a memoranda of the transfer of his money to another account in the bank, and that the paper which was handed to plaintiff was such a memoranda, when, in fact, it was not, imports a question of fraud, which must be proven like any other fact: Green v. North Buffalo Township, 56 Pa. 110; Schuylkill County v. Copley, 67 Pa. 386; American Harrow Co. v. Swoope, 16 Pa. Superior Ct. 451; El Dorado Jewelry Co. v. Hartung, 36 Pa. Superior Ct. 463; Young v. Edwards, 72 Pa. 257; Braunschweiger v. Waits, 179 Pa. 47; Com. to use v. Julius, 173 Pa. 322; Ettinger v. Jones, 139 Pa. 218; Ziegler v. Bank, 93 Pa. 393.

*Nelson McVicar,* of *Kennedy, McVicar & Hazlett,* for appellee.—The quality of the evidence required to avoid the contract made with Sirkush is that it must be clear, precise and indubitable: Hicks v. Harbison-Walker Co., 212 Pa. 437; Highlands v. R. R. Co., 209 Pa. 286.

The quantity of the evidence required to avoid the contract with Sirkush is the testimony of two witnesses or one witness and corroborating. circumstances equivalent to another: Fuller v. Law, 207 Pa. 101; Sutch's Est., 201 Pa. 305.

The rule is the same whether the party defrauded can read or write the English language. In either case he does not depend upon what is in the instrument, but relies on what is said to him: Hicks v. Harbison-Walker Co., 212 Pa. 437; Penna. R. R. Co. v. Shay, 82 Pa. 198; Sylvius v. Kosek, 117 Pa. 67.

The offer of the alleged testimony of Paul Sodoma was incompetent and irrelevant: Smith v. Arsenal Bank, 104 Pa.

518; Mundis v. Emig, 171 Pa. 417; Keeler Co. v. Schott, 1 Pa. Superior Ct. 458.

OPINION BY HEAD, J., December 13, 1909:

At the conclusion of the trial the learned judge below directed the jury to return a verdict in favor of the defendant and afterwards entered judgment thereon. Had the testimony introduced by the plaintiff been submitted to the jury and been accepted by them as credible, they would have been warranted in finding the following facts:

The plaintiff is a foreigner, unable to speak or understand the English language, and so illiterate that he cannot read or write even in the tongue wherein he was born. He had been living and working for some years in the vicinity where the defendant bank is located. The bank, desiring to acquire and retain the patronage of the foreigners working in the neighborhood, had created a special department for the purpose of dealing with them, and this was presided over and conducted by a special cashier or agent named Sirkush, who was able to transact business with them in their own language.

Some two years after he began to do business at the bank, he went there to make a deposit and was induced by the manager to sign with his mark a withdrawal order—the equivalent of a check in an ordinary banking transaction—for $500. His testimony is that he received no money whatever at that time, and had no intention of withdrawing any money from the bank. He declares that in the bank, and while transacting his business as a depositor with Sirkush, he was told by the latter that the bank paid a higher rate of interest on moneys which would be deposited in another department of the bank; that he could avail himself of the opportunity to draw a higher rate of interest by attaching his mark to a paper which Sirkush prepared and presented to him, and on the strength of this statement, and for the purpose, as he supposed, of changing his deposit from one department of the bank to another, he attached his mark to the paper prepared and presented by Sirkush.

The latter then told him that his interest would be payable

every six months, and gave him a paper which he represented as being a receipt from the bank for the money thus specially deposited, which receipt the plaintiff was to carefully keep and present at the bank at the expiration of six months, when his interest would fall due and be paid to him.

In the following September the plaintiff, who in the meantime had been continuing to deposit small sums in the bank and to withdraw some of them from time to time as his necessities required, went to the bank, presented his paper to Sirkush, who paid to him $15.00, being six months' interest at six per cent on $500; took up the original paper and gave to him a new one of the same kind, with similar instructions concerning it. This paper the plaintiff again kept for six months and again presented it at the bank to receive his interest as before. He then learned that Sirkush had left the service of the bank, and for the first time was informed by the officer who had succeeded him that the paper which he held was no obligation of the bank, but was merely an individual promissory note of Sirkush, the former officer.

He was told that on the strength of the paper which he had signed the year before, which was a regular withdrawal order, the bank had charged to his account the $500 represented by it, and that he must look to Sirkush, who had obtained the money, for payment. The bank offered to make an effort to collect this money from Sirkush, and for that purpose the note was left there, but being unable to collect the money, and refusing to recognize the plaintiff's right to have it from the bank, this suit was begun.

It will be observed the plaintiff rests his claim on the undeniable fact that the relation of depositor and banker had been established between the parties; that the money for which he now sues had been deposited in the defendant bank, and that the latter had never paid it over to him in discharge of its legal obligation to pay that sum upon his demand. We may here remark that the testimony of the plaintiff on some of the important points already noted was contradicted, but with this we have no concern in the face of the directed verdict against him.

The bank, by way of defense, set up the withdrawal order signed by the plaintiff with his mark, on the strength of which it had paid out his money and charged it to his account. To this the plaintiff replied that the paper was not his act; that it had been procured by gross fraud and misrepresentation on the part of the bank officer who obtained it, and that under such circumstances the bank could not shield itself behind the fraud of its officer, and thus escape the obligation which would otherwise rest upon it.

The learned trial judge was of the opinion that the conditions thus existing left the plaintiff in the situation of one who was seeking the aid of a chancellor to reform a written instrument executed by him. That inasmuch as he was unable to support his claim by testimony other than his own, and as that testimony was contradicted by the bank officer and the papers made during the transaction, the evidence could not be said to be of that clear, precise and indubitable character necessary to bring about the reformation of a written instrument. If the learned judge was correct in this conception of the attitude which the plaintiff thus occupied in relation to the case, his conclusion would be doubtless supported by the cases which he cites in his opinion refusing the motion for a new trial.

It appears to us, however, that upon the main question involved, our Supreme Court has so clearly decided that in such case the testimony of the plaintiff must carry the question of fraud to the jury, that there is but little room left for a discussion of it along the line of elementary principles.

In Steckel v. First National Bank of Allentown, 93 Pa. 376, it appeared that one William H. Blumer was the president of the bank, and his son Jacob was the cashier. "Three of the directors, including the said William H. Blumer, composed the banking house of William H. Blumer & Co. which carried on business but a few hundred feet distant from the First National Bank of Allentown. The plaintiffs having money on deposit with the bank, and being desirous of obtaining interest bearing certificates therefor, called at the bank for that purpose." The plaintiffs then testified—and it does not appear

from the report of the case that there was any other evidence on the subject except that of one of their own number—that he asked the teller whether or not the First National Bank issued certificates of deposit and paid interest thereon, and his answer was "Yes." "Then I came there again in September, 1876, and made my ordinary deposit in the bank; and after we were through, I said to the teller that I would take the First National Bank certificates for $700; I filled out a check, and he handed me a certificate. I asked him, 'Is this the First National Bank certificate?' The answer was, 'Yes, sir, it is.' I then said, 'This reads Blumer & Co.; I want this distinctly understood, I want nothing but the First National Bank certificate.' He assured me that this was one and the same thing. With this assurance, I took that certificate. This was in the presence of the cashier of the bank, Jacob A. Blumer." The firm of Blumer & Co. became insolvent, and the bank refusing to recognize its liability on the certificate mentioned and other like ones which followed it, the plaintiffs brought their action against the bank to recover the amount of their deposits.

Upon that state of facts the learned trial judge was of the opinion that there was no sufficient testimony to submit to the jury to warrant a finding that the bank was liable for the payment of the moneys evidenced by the certificates, and directed a verdict for the defendant. In reversing this judgment, Mr. Justice PAXSON, speaking for the court, says: "We must assume that the jury would have found the facts as testified to by the plaintiff Steckel. The facts established, we have a case of palpable fraud. It is not an answer to say the plaintiffs ought not to have been deceived, and, with ordinary care, would not have been. The fact that the Blumers were respectively president and cashier of the National Bank, as well as leading members of the banking-house of Blumer & Co., was calculated to mislead and deceive; and when told in positive terms that the certificates, although signed by Blumer & Co., were the certificates of the bank, the plaintiffs may readily have believed it was all right. . . . There is no doubt as to the general rule that an agent can only bind his principal so long

as he acts within the scope of his authority; but we do not think the principle applies in this case. A bank is responsible for the safe-keeping of the money of a depositor, and it cannot set up the fraud of its own officers as an answer to a demand for repayment. Public policy forbids it.

"The plaintiffs, after ascertaining the fraudulent character of the transaction, tendered the certificate to the bank, and demanded the payment of their original deposit. In other words, they rescinded the contract on the ground of fraud. If their allegations are true, they had a right to do so, and proceed upon the original cause of action. The question of fraud should have been submitted to the jury."

It will be observed that in the foregoing case the plaintiff was an intelligent man, and was able to read and did read the certificate which was handed to him, and to discover from such reading that the paper did not purport on its face to be an obligation of the National Bank, but appeared to be that of a private firm. Nevertheless, because that paper was given to him in the bank by a bank officer, in the transaction of what appeared to be the regular business of the bank, and because the plaintiff relied upon the assurance then and there given him by such officer, it was held that his case should have gone to the jury on his testimony.

In the companion case of Ziegler against the same bank, reported in the same volume, 93 Pa. 393, we have a case still more exactly like the one at bar in the fact that the plaintiff was an illiterate man, unable to read the certificate which was handed to him. At the trial of that case the plaintiff offered to prove by his own testimony substantially the facts already recited at length in the former case, and that he accepted the certificates which turned out to be those of Blumer & Co. on the strength of the representations of the bank's officer that they were the certificates of the bank. The learned trial court rejected the testimony and directed a verdict for the defendant. In reversing that judgment, the Supreme Court, again speaking through Mr. Justice PAXSON, said: "When the plaintiff took his money to the First National Bank of Allentown, and handed it to the cashier for deposit, the bank became re-

sponsible therefor. The cashier was the executive officer of the bank, and authorized by the very nature of his office to receive money on deposit. After receiving it, no trick or fraud on his part, by means of which the money was passed over to Blumer & Co., a firm in which the bank officers were largely interested, and appeared to have had the control, could absolve the bank from its liability. No class of men have the confidence of the people to a greater extent than bank officials. It would be monstrous to allow them to take advantage of the ignorant and unwary, by reason of their position and the confidence which it inspires. It was doubtless a misfortune to this bank to have unworthy officials, if such should prove to be the case. It certainly was unwise to permit its chief officers to occupy a dual position with divided interests, but the consequences resulting therefrom cannot be visited upon those who dealt in good faith with the bank.

" This case is ruled in a great measure by Steckel v. Bank, 93 Pa. 376. It was error to reject the evidence contained in the plaintiff's offer. The facts offered to be proved amounted to a fraud upon the plaintiff, and he was entitled to have that question passed upon by a jury."

Here then in two distinct and emphatic utterances by the Supreme Court it has been declared that where a plaintiff sues for his deposit, and declares that the check (or withdrawal order), which he signed against the deposit, was procured by the bank officers and given in exchange for some paper upon which one or more of the bank officers were liable, but which was falsely represented by those officers to be the obligations of the bank, the testimony of the plaintiff asserting that such a fraud was practiced is sufficient to carry the case to the jury.

Two years later in Bank v. Williams, 100 Pa. 123, an action was begun against the same bank, and the plaintiff there sought to recover by the application to his case of the principles enunciated in the two cases already cited. The Supreme Court, in distinguishing the last case from the two former ones, reasserted the principle upon which those decisions rested in the following language: "There is, however, a marked distinction between the cases. In those cited there was a posi-

tive assertion on the part of the bank officers that the certificates in question were the certificates of the bank, and this assertion was made under circumstances which rendered it at least probable the parties were misled by it. We therefore held there was a question of fraud which ought to have been submitted to the jury."

In the present case the testimony of the plaintiff tended to show that he was misled by the representations of the bank officers, whilst engaged in the service of the bank, into accepting the individual obligation of the officer under the belief that he was receiving an obligation of the bank for the repayment of his deposit with interest thereon. We are impelled to the conclusion that this was the same fraud, perpetrated in the same manner, that is disclosed by the record of the cases already cited, and upon their authority we must hold that the learned trial court should have submitted this testimony to the jury. In reaching this conclusion we in no wise intend to impair or weaken the force of the rule prescribing the quantity and quality of evidence necessary to reform a written instrument. Nor do we intend to declare, as we are asked to do, that a bank occupies such a relation of trust or confidence towards its depositor, that the law casts upon it the burden of proving that each of the multitude of daily transactions between it and its depositors, was conscionable, done in good faith, etc. We but adhere to the doctrine of stare decisis and recognize the binding authority of the decisions of the Supreme Court declared in cases which exhibit no substantial difference from the case at bar. The first and third assignments of error must be sustained.

By the testimony, the rejection of which constitutes the remaining assignment, the plaintiff sought to prove by another witness that, in an independent transaction, the same bank officer had undertaken to defraud him in a manner similar to that in the present case. Even if true, it is not apparent how this would tend to prove that this plaintiff, in the transaction he had with the bank, was defrauded. Moreover, the ascertainment of its truth would involve an inquiry into an issue wholly collateral to the one now before us. We think there-

398 BOS, Appellant, *v.* PEOPLE'S NATIONAL BANK.

Opinion of the Court—Dissenting Opinion.   [41 Pa. Superior Ct.

fore the learned trial judge was correct in rejecting that offer, and the second assignment is dismissed.

Judgment reversed and a venire facias de novo awarded.

RICE, P. J., dissenting:

I am constrained to dissent from the opinion of my brethren, and to conclude that the judgment of the court below should be affirmed for the reasons given by its learned president judge.