## Roney *v.* Clearfield County Grange Mutual Fire Insurance Company, Appellant.

Argued October 4, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Clarence R. Kramer,* with him *Peelor & Feit,* for appellant.

*James W. Mack, Jr.,* with him *James W. Mack,* for appellee.

OPINION BY MR. JUSTICE STERN, January 9, 1939:

At the trial of an action on a policy issued by a mutual fire insurance company, the latter presented two defenses; one—with which we are not here concerned—that plaintiff failed to pay an annual premium assessment, the other that, in the application signed by plaintiff, he had falsely stated there were no encumbrances upon the property. A verdict was rendered in favor of plaintiff, and defendant's motions for a new trial and for judgment n. o. v. were overruled.

The application contained a covenant by plaintiff that all the answers and representations therein were warranted and made a part of the policy to be issued, and if they were in any respect untrue the policy was to be void.

Plaintiff testified that the company's agent had come to his store to negotiate a policy of insurance; that in filling out the application the agent asked him certain questions, but not whether there were encumbrances on

the property; that he did not authorize the agent to insert after that question the word "None"; that he had the opportunity before signing the application to read it, but did not do so because he was in a hurry. He admitted that he knew at the time of the execution of the application there were judgments encumbering the premises, some of them in substantial amounts. A witness for plaintiff who was present at the interview said the agent asked no question about encumbrances. On the other hand, the agent testified that he did make this inquiry of plaintiff and the latter answered in the negative. On cross-examination he was asked whether he had taken an application from one Charles Miller and in that instance likewise had failed to ask the applicant as to encumbrances but had nevertheless inserted the word "None." Defendant's objection to this question was overruled. The agent replied that in Miller's case also he had inquired concerning encumbrances. In plaintiff's rebuttal, Miller, over defendant's objection, was allowed to deny this, and to testify that the agent, in taking an application from him, had of his own accord written the word "None" in answer to this question. (Miller admitted, however, that there were in fact no incumbrances upon his property.) Since the purpose of this examination was to show that on another occasion the company's agent had filled in the blank without obtaining the information from the applicant, just as he was charged with having done in the present instance, it is clear that such evidence was improperly admitted. It must have been extremely harmful to defendant to allow the jury to be told that the agent had acted with Miller in the same way as allegedly with plaintiff. That a person has done an act on one occasion is not probative of the contention that he did a similar act upon another occasion: 1 Wigmore on Evidence 230, section 192; *Baker v. Irish,* 172 Pa. 528; *Veit v. Class & Nachod Brewing Co.,* 216 Pa. 29; *Wyatt v. Russell,* 308 Pa. 366; *Johnson County Savings Bank v. Koch,* 38 Pa. Superior

Ct. 553; *Bos v. People's National Bank,* 41 Pa. Superior Ct. 388; *Artman v. Stanford,* 93 Pa. Superior Ct. 287; *Keiter v. Miller,* 111 Pa. Superior Ct. 594; *Nowalk v. Hileman,* 118 Pa. Superior Ct. 322. The error in the admission of this evidence would compel the granting of a new trial.

There is, however, a more fundamental question in the case. Even accepting as true plaintiff's version of his interview with the agent, can he recover on this policy? Ordinarily, where representations in the application are warranted by the insured to be correct, the company may resist liability if the warranty is breached. Can the insured avoid this result by proof that the answers as recorded were not his, but were inserted, either fraudulently or negligently, by the company's agent? There is a marked difference of opinion regarding this question in the courts of various jurisdictions, and in our own State it may perhaps be said that the authorities do not permit of a categorical answer.

In *Eilenberger v. Protective Mutual Fire Insurance Co.,* 89 Pa. 464, where the company's agent, in writing down the answers of the insured, misstated them, recovery on the policy was allowed even though the insured did not read the application before signing it and the statements were warranted to be true.

Again, in *Smith v. Farmers' & Mechanics' Mutual Fire Insurance Co.,* 89 Pa. 287, the applicant gave a truthful answer to a question in the application but the company's agent wrote it incorrectly. There was a warranty as to the representations contained in the application, but the court said (p. 292) : "If a truthful answer was in fact given, and the agent either intentionally or negligently wrote it down erroneously, and the plaintiff, resting in the belief that his answer, as given, was correctly written by the agent, signed the application in good faith, he should have been permitted to prove these facts."

In *Susquehanna Mutual Fire Insurance Co. v. Cusick,* 109 Pa. 157, the application contained a misstatement as to the size of the property; it was warranted to be accurate. The insured was an ignorant woman, unable to read or write. She was allowed to prove that the statement was not the one made by her but was the work of the agent himself.

In *Kister v. Lebanon Mutual Insurance Co.,* 128 Pa. 553, the policy provided that the answers of the applicant to certain questions, with a warranty of their truth, were to be part of the policy, and if any of them was untrue the policy was to be void. Evidence on the part of the insured was admitted to show that he gave the agent true answers but the agent wrote them down incorrectly and the insured signed in ignorance of this fact and without reading the application. Nevertheless, recovery was allowed. A similar case, with a like ruling, is *Meyers v. Lebanon Mutual Insurance Co.,* 156 Pa. 420.

In *Dowling v. Merchants Insurance Co.,* 168 Pa. 234, it was said (p. 239) : "The fraud or mistake of an insurance agent within the scope of his authority will not enable his principal to avoid a contract of insurance to the injury of the insured who acted in good faith, and the fraud or mistake of the agent may be proved by parol evidence notwithstanding it is provided in the policy that the description of the property shall be a part of the contract and a warranty by the insured. This is clear upon principle, and it is abundantly sustained by authority."

In *Suravitz v. Prudential Insurance Co.,* 244 Pa. 582, the court, after referring to a number of Pennsylvania decisions, said (pp. 586-7) : "In some of the cases cited the covenant was that of warranty, but even in those cases this court held that where the agent of an insurance company omits a material portion of an answer of the applicant, or incorrectly writes down the answer as made, either intentionally or negligently, in a suit upon the policy the applicant may show by parol what the

real answer was, if the application was signed in good faith without having been read, or if the applicant signed without knowledge of the fact that the answer had been incorrectly written down by the agent. These cases were put upon the ground that the fraud or mistake of an insurance agent acting within the scope of his authority will not enable his principal to avoid the policy to the injury of the insured who acted in good faith. It will thus be seen that this court in exceptional cases, even under the old rule, where the equities were strongly with the insured, refused to be bound by the doctrine generally applicable to warranties."

In *Carrozza v. National Life Insurance Co.*, 62 Pa. Superior Ct. 153, the insured was an Italian, illiterate in the English language. He made answers to questions asked of him by the insurance company's agent and signed the application believing that it truly exhibited the real state of facts. The answers, however, were erroneously put down by the agent in the application, which contained a warranty of the statements made. The court said (pp. 157, 158) : "We think it clear, under our own decisions, it has become the well-settled law that where an application for a policy of insurance is declared to be a warranty of the truth of the facts therein stated, if it be filled out by an agent of the company, the plaintiff is not precluded from showing by testimony that, either through the fraud or mistake of the agent, his answers were not truly recorded, and the company in such cases may not protect itself by reason of such fraud or mistake on the part of its own agent." To the same effect is the case of *Fidelity Title & Trust Co. v. Metropolitan Life Insurance Co.*, 64 Pa. Superior Ct. 361.

In *Hoffman v. Mutual Fire Insurance Co. of Reading*, 274 Pa. 292, it was said (p. 299) : "Where a policy of insurance is procured through the agency of one representing the insurance company, and he, either through fraud or mistake, writes a fact as warranted in the policy or application different from that stated by the insured,

notwithstanding the rule as to warranty, the truth may be shown."

On the other hand, as against this formidable line of authorities, there are to be found, especially among the more recent cases, decisions holding it to be the duty of the insured to read the application before signing it, and, if he fails to do so, and the answers are warranted to be true, he is barred from attempting to prove that his replies to the questions were correct but that the agent wrote them incorrectly in the application.

In *Rinker v. Ætna Life Insurance Co.*, 214 Pa. 608, an action upon a policy of life insurance, it appeared that the application signed by the insured contained the answer "No" to the question whether she had ever had a severe surgical operation. The application warranted the truth of the answers. It being shown at the trial that the insured had undergone such an operation, plaintiff offered to show that the insured had made a correct statement to the agent in regard to this operation and then had signed the application without reading it. The action of the trial judge in overruling the offer was sustained on appeal, on the ground that the applicant was neither blind, deaf, nor unable to read, and, therefore, when she signed the paper without reading it, she was bound by what it contained. The court quoted the well-known pronouncement of Chief Justice GIBSON in *Greenfield's Estate*, 14 Pa. 489, 496, that if a party who can read "will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law."

In *Koppleman v. Commercial Casualty Insurance Co.*, 302 Pa. 106, a false answer was made to a question in the application, which, according to the construction given by the court to its phraseology, in effect warranted the truth of the statements it contained. It was held that the insured was precluded from proving that he cor-

rectly informed the company's agent as to the facts but they were not properly written down by the agent and the insured signed the application without reading it. Both in this case and in the preceding one, the application contained a clause that no statement made to the agent and not contained in the application should be considered as having been made to or brought to the notice of the company, or as charging it with any liability by reason thereof, and in each case the court held that the insured was bound by this clause, even though he neglected to read the application before affixing his signature. In the *Koppleman* case the court said (p. 114) : "Plaintiff, perfectly able to read and write English, could not escape from his agreement in this respect after having signed it, under the plea that he had not read it."

In *Applebaum v. Empire State Life Assurance Society*, 311 Pa. 221, false answers were made by the insured. The application warranted them to be true. A verdict for the plaintiff was reversed because the trial court permitted the introduction of evidence that the insured had truthfully answered the questions but the agent for the company, instead of recording the answers as made, filled the blanks with false denials. The plaintiff there contended that the case was not governed by the *Rinker* and the *Koppleman* cases, because the printed application did not, as in those cases, contain a limitation of the agent's authority. The court said (p. 224) : "The general rule is that one who signs an application for insurance without reading it, when he might have done so, will be held to have read it," and pointed out that this doctrine was not only applied in the *Rinker* and the *Koppleman* cases but is the law in the federal courts and in England. The court extended the application of the *Koppleman* case by saying (pp. 224, 225) : "Koppelman might have but did not read the application signed by him, and, in consequence, contended that he was ignorant of a limitation of the agent's power ex-

pressed in the application, and was, therefore, not bound by what he had signed; we held that he must be treated as knowing what he would have learned by reading the application. The scope of the presumption is not restricted to the mere discovery of the limitation of the agent's authority; the applicant is presumed to know all that a reading of his application would have revealed."

Finally, in *Boyle v. Eureka-Maryland Assurance Corporation*, 116 Pa. Superior Ct. 61, it was said (p. 64): "The appellant sought to escape the effect of the false statements by alleging that the written answers in the application were inserted by the agent of the insurance company. The averment in this regard was a general denial that the insured made false statements followed by the statement that the answer 'No' was inserted by the agent of the company. There is no allegation that the applicant for insurance did not know the nature of the paper he was signing. His beneficiary cannot escape the consequences of his negligence by saying that the person the insured asked to fill it up for him was the agent of the company: *Applebaum v. Empire State Life Assur. Society*, 311 Pa. 221, 166 A. 768; *Koppleman v. Com. Cas. Ins. Co.*, 302 Pa. 106, 153 A. 121."

From this detailed review it appears that, according to earlier cases, the insured is not bound by his warranty where he makes true answers to questions and they are falsely written down by the company's agent, but that this viewpoint has been modified by other and later authorities, which hold the applicant, even under such circumstances, to the duty of ascertaining the contents of the application before signing it, unless, perhaps, he is illiterate, or is in some way tricked into signing. It is unnecessary to pursue this subject further, however, because, in our opinion, plaintiff cannot find support for his position in the present case in *any* of the decisions cited. In none of them, even those preceding the *Applebaum* case, was it held that an applicant who

could have read the application but failed to do so was absolved from obligation in regard to the statements, representations and covenants contained in the application *other than the answers actually made by him to the company's agent and by the latter falsely recorded.* On the contrary, in the *Rinker* and *Koppleman* cases it was expressly decided that whatever protection the applicant might be entitled to with respect to answers orally supplied by him to the agent, he was bound by the other portions of the application. The reason for such a distinction is obvious. Where the insured gives answers or makes statements to the agent to be inserted in the application there may be justification for his contention that as to such answers and statements he has the right to take for granted they will be correctly written, and that he need not, therefore, assure himself concerning them by actual inspection of the paper. But as to all other statements, answers or provisions in the application, whether originally printed therein or inserted in writing by the agent prior to the signing by the applicant, without the question or subject being called to the attention of the applicant at all, the latter has no right to assume anything whatever as to the contents of the paper in regard to such matters, and as to them is under the same obligation to read the application before signing as is everyone else who affixes his signature to a document involving legal obligations.

In the present case, according to plaintiff's own version, the agent did not ask him any question concerning the encumbrances upon the property. Plaintiff, therefore, had no reason to assume that there was or was not contained in the application a representation or statement in regard to encumbrances, or, if any, what that statement or representation was. Nor does plaintiff, an educated, competent businessman, pretend he was unable to read the application, or that he was induced not to read it by the agent, or that his failure to inspect it was caused by any fraud, trick or artifice upon the part

of the agent; on the contrary, he frankly admits that he had every opportunity to read before signing but forbore to do so only because he was in a hurry at the time.

The judgment is reversed and is here entered for defendant.